Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 552-2370
Email: miles@milesclarklaw.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RONALD MILLER,<br><br>     Plaintiff,<br>v.<br><br>CENTRA CREDIT UNION; EQUIFAX INFORMATION SERVICES, LLC; HORIZON BANK, N.A.; TD AUTO FINANCE; and TRANS UNION, LLC,<br><br>     Defendants. | Civil Action No.:  1:23-cv-01136<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Jackson County, State of Indiana and because Defendants are subject to personal jurisdiction in Jackson County,

State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2).

## PARTIES

4.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

5.    Plaintiff Ronald Miller ("Plaintiff") is a natural person residing in Jackson County, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.    Defendant Centra Credit Union ("Centra") is a corporation doing business in the State of Indiana.  Centra is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7.    Defendant Horizon Bank, N.A. ("Horizon") is a corporation doing business in the State of Indiana.  Horizon is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

8.    Defendant TD Auto Finance ("TD") is a corporation doing business in the State of Indiana.  TD is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

9.    Defendant Equifax Information Services, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f),

and a nationwide consumer reporting agency under 15 U.S.C. § 1681a(p).  Equifax is a corporation which does business in the State of Indiana.

10. Defendant Trans Union LLC ("Trans Union") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a nationwide consumer reporting agency under 15 U.S.C. § 1681a(p).  Trans Union is a corporation which does business in the State of Indiana.

11. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## FACTUAL ALLEGATIONS – FCRA VIOLATIONS

### *General Allegations, FCRA Liability, and Industry Reporting Guidelines*

12. Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

13. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a

vital role in assembling and evaluating consumer credit and other information on consumers.

14. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

15. Furthering the FCRA's goal of accuracy, a consumer may procure a "disclosure" of all information a reporting agency has stored on them under 15 U.S.C. § 1681g to, *inter alia*, review their information for inaccuracies or the presence of identity theft. To the extent Plaintiffs' creditors chose to furnish data to a Consumer Reporting Agency ("CRA"), such data, if accurate, is typically included in Plaintiffs' "consumer files," which the CRA must disclose to a consumer in a clear and accurate manner upon request. 15 U.S.C. § 1681g. Section 1681g disclosures are "consumer reports" under the FCRA when they are acquired for free from nationwide consumer reporting agencies once during any 12-month period. *See* 15 U.S.C. § 1681j(a)(2); *see also id.* at § 1681a(p).

16. The FCRA's protection provisions also permit consumers to dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a CRA must notify the source or furnisher of information, including all relevant information regarding the dispute the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2).

17. Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA, conduct an investigation of the disputed item, and report the results of the investigation back to the CRA. 15 U.S.C. § 1681s-2(b). This reinvestigation must conclude no later than 30 days after submission of a consumer dispute, or 45 days if the dispute pertains to a Section 1681j(a) disclosure. *See* 15 U.S.C. § 1681i.

18. If the furnisher's investigation yields results such that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

19. If the CRA's reinvestigation (which necessarily includes the furnisher's investigation) finds the disputed information to be inaccurate, incomplete, or unable to be verified, then the CRA must either promptly delete that information or modify it, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

20. The CRA must timely notify the disputing consumer regarding the results of the reinvestigation. 15 U.S.C. § 1681i(a)(6). As part of this notice of results of reinvestigation, the CRA must provide a "consumer report." 15 U.S.C. § 1681i(a)(6)(B)(ii).

21. Whenever a reporting agency prepares a consumer report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). This obligation extends to both Section 1681g reports, 1681i(a)(6) reports, and any other consumer report fitting the definition contained in 15 U.S.C. § 1681a(d), whether sent to a consumer or any other party.

22.     CRAs and furnishers also must comply with industry reporting guidelines from the Consumer Data Industry Association ("CDIA"), in the form of industry reporting standards called the "Consumer Reporting Resource Guide" or "Metro 2."  The CDIA's standards are composed by only some credit-reporting stakeholders – i.e., reporting agencies and furnishers, but not consumers on whom data is reported – and as such their guidance often favors those parties at the consumers' expense.  Nevertheless, courts have held that a furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted).  *See also Wylie v. Experian, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

23.     On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

24.     Thus, the incomplete and inaccurate reporting provided to Plaintiffs as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

25. This is true both under Metro 2, and if Metro 2 does not apply. For example, even if Metro 2 does not apply, then Defendants were required to report historically accurate information, pursuant to 15 U.S.C. §§ 1681g, 1681e(b), 1681i and 1681s-2(b).

26. The inaccurate reporting provided to Plaintiffs as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

### *Plaintiffs' Bankruptcy Filings*

27. On September 25, 2018, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiffs' case was assigned Case Number 18-7350-JMC-13 ("Bankruptcy"). BK ECF No. 1.

28. In the bankruptcy petition ("Petition"), Plaintiff included obligations from Centra, Horizon, and TD on Schedule D. The Centra and TD obligations pertained to loans for vehicles; the Horizon obligation pertained to Plaintiff's mortgage on real property. Plaintiff had an additional Central account, opened in 2010, which she listed on Schedule E/F of her petition.

29. In Plaintiff's controlled plan of reorganization, Plaintiff agreed to pay the Centra, Horizon, and TD obligations in full and outside of the bankruptcy. *See* BK Doc. 2. Plaintiff paid off his TD obligation in 2020, and his Centra obligation in 2021. On August 25, 2021, the Bankruptcy Court approved the sale of Plaintiff's home; on December 16, 2021, Plaintiff informed the Court that the sale had been completed with all funds distributed. BK Doc. 62.

30. On December 17, 2021, Plaintiff earned a discharge of the Bankruptcy. *See* BK Doc. 63.

*** Procuring of Credit Reports and Submission of Disputes ***

31.    Pursuant to Section 1681g, Plaintiff requested and received his consumer reports from reporting agencies Equifax (March 4, 2022); Experian Information Solutions, Inc. ("Experian") (March 8, 2022); Trans Union (July 13, 2022).  Collectively, these reports are entitled "Initial Credit Reports."

32.    On October 12, 2022, and pursuant to Section 1681i, written dispute letters for Plaintiffs were sent to Experian, Equifax, and Trans Union regarding disputes of accuracy of the reported information on the Credit Reports, as specified below.  Collectively, these reports are entitled "Disputes."

33.    On November 25, 2022, Equifax sent a Section 1681i(a)(6) consumer reports after conclusion of its reinvestigation into Plaintiff's dispute; on December 1, 2022, Trans Union sent a similar Section 1681i(a)(6) reinvestigation.  These documents are referred to as "Reinvestigations."[1]

34.    All of the Credit Reports and Reinvestigations were "consumer reports" under 15 U.S.C. § 1681a(d).

35.    All iterations of the Credit Reports – Initial, Post-Dispute, or Final – fell under than ambit of 15 U.S.C. § 1681g.

**CENTRA FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)**

36.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

37.    On Plaintiff's Initial Credit Reports, Centra inaccurately suppressed Plaintiff's payment history on the account, and added a notation of bankruptcy to the tradeline.  This incomplete and inaccurate reporting deprived Plaintiff of the benefit of the payments he

---

[1] There is no indication of a reinvestigation from Experian.

had made on the account during the bankruptcy, and also suggested to the world that Plaintiff's obligation had been discharged, when instead he paid it in full directly to the creditors.

38. In the Experian, Equifax, and Trans Union Disputes, Plaintiff placed Centra on notice of the reported inaccuracies listed above, and requested that the information be corrected.[2]

39. Upon information and belief, upon receiving the applicable Disputes, the CRAs notified Centra of the applicable disputes based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

40. Centra was required to conduct an investigation into this specific account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

41. A reasonable investigation by Centra at any point following the Disputes would have indicated Plaintiff's Centra account was reporting with a status of paid in full, with no bankruptcy indicators causing the tradeline to report negatively.

42. However, there is no indication ever made all of the corrections Plaintiff requested. Plaintiff's Equifax reinvestigation did not indicate that any changes had been made to the Centra tradeline. Trans Union's Reinvestigation properly updated Plaintiff's account to reflect his payments during bankruptcy, but continued to include a bankruptcy status on the tradeline, causing it to report negatively.

43. By failing to correct Plaintiff's information, Centra ensured Plaintiff's information would continue to report inaccurately and inconsistently.

---

[2] The exception was Plaintiff's Equifax dispute letter, which did not technically identify the bankruptcy notation as inaccurate.

44. These failures caused Plaintiff's consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to Centra.

45. Centra repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

46. Centra failed to review all relevant information provided by Plaintiff in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

47. Due to Centra's failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

48. Centra's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful. Centra knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, Centra's conduct was negligent.

49. Plaintiff has suffered concrete and imminent harm to creditworthiness. The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an

imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

50.     Also as a result of Centra's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Centra's inaccurate reporting, and damage to Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with Centra have also caused Plaintiff to suffer emotional distress.  Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

51.     Centra's conduct at least negligent, but also willful.  Plaintiffs are, accordingly, eligible for statutory damages.

52.     Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### HORIZON FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)

53.     Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

54.     On Plaintiff's Initial Credit Reports, Horizon inaccurately suppressed Plaintiff's payment history on the account, and added a notation of bankruptcy to the tradeline.  This incomplete and inaccurate reporting deprived Plaintiff of the benefit of the payments he had made on the account during the bankruptcy, and also suggested to the world that Plaintiff's obligation had been discharged, when instead he paid it in full directly to the creditors.

55. In the Experian, Equifax, and Trans Union Disputes, Plaintiff placed Horizon on notice of the reported inaccuracies listed above,[3] and requested that the information be corrected.

56. Upon information and belief, upon receiving the applicable Disputes, the CRAs notified Horizon of the applicable disputes based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

57. Horizon was required to conduct an investigation into this specific account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

58. A reasonable investigation by Horizon at any point following the Disputes would have indicated Plaintiff's Horizon account was reporting with a status of paid in full, with no bankruptcy indicators causing the tradeline to report negatively.

59. However, there is no indication ever made all of the corrections Plaintiff requested. Plaintiff's Equifax reinvestigation did not include the positive payment history, and Trans Union's reinvestigation took a "one size fits all" approach and deleted the tradeline in its entirety, thus depriving Plaintiff of all positive payment history.

60. By failing to correct Plaintiff's information, Horizon ensured Plaintiff's information would continue to report inaccurately and inconsistently.

61. These failures caused Plaintiff's consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to Horizon.

62. Horizon repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

---

[3] The exception was Plaintiff's Equifax dispute letter, which did not technically identify the bankruptcy notation as inaccurate.

63.    Horizon failed to review all relevant information provided by Plaintiff in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

64.    Due to Horizon's failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

65.    Horizon's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.  Horizon knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, Horizon's conduct was negligent.

66.    Plaintiff has suffered concrete and imminent harm to creditworthiness.  The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

67.    Also as a result of Horizon's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Horizon's inaccurate reporting, and damage to

Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with Horizon have also caused Plaintiff to suffer emotional distress.  Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

68.    Horizon's conduct at least negligent, but also willful.  Plaintiffs are, accordingly, eligible for statutory damages.

69.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### TD FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)

70.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

71.    On Plaintiff's Initial Credit Reports, TD inaccurately suppressed Plaintiff's payment history on the account, and added a notation of bankruptcy to the tradeline.  This incomplete and inaccurate reporting deprived Plaintiff of the benefit of the payments he had made on the account during the bankruptcy, and also suggested to the world that Plaintiff's obligation had been discharged, when instead he paid it in full directly to the creditors.

72.    In the Experian, Equifax, and Trans Union Disputes, Plaintiff placed TD on notice of the reported inaccuracies listed above,[4] and requested that the information be corrected.

73.    Upon information and belief, upon receiving the applicable Disputes, the CRAs notified TD of the applicable disputes based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

---

[4] The exception was Plaintiff's Equifax dispute letter, which did not technically identify the bankruptcy notation as inaccurate.

74. TD was required to conduct an investigation into this specific account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

75. A reasonable investigation by TD at any point following the Disputes would have indicated Plaintiff's TD account was reporting with a status of paid in full, with no bankruptcy indicators causing the tradeline to report negatively.

76. However, there is no indication ever made all of the corrections Plaintiff requested. Plaintiff's Equifax reinvestigation did not include all of Plaintiff's payment history, and Trans Union's reinvestigation both omitted Plaintiff's payment history and rereported the inaccurate bankruptcy notation.

77. By failing to correct Plaintiff's information, TD ensured Plaintiff's information would continue to report inaccurately and inconsistently.

78. These failures caused Plaintiff's consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to TD.

79. TD repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

80. TD failed to review all relevant information provided by Plaintiff in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

81. Due to TD's failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

82.  TD's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.  TD knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, TD's conduct was negligent.

83.  Plaintiff has suffered concrete and imminent harm to creditworthiness.  The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

84.  Also as a result of TD's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging TD's inaccurate reporting, and damage to Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with TD have also caused Plaintiff to suffer emotional distress.  Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

85.  TD's conduct at least negligent, but also willful.  Plaintiffs are, accordingly, eligible for statutory damages.

86. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### EQUIFAX FCRA VIOLATIONS – 1681E(B), 1681I, 1681G

87. Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

88. Equifax's reporting on all of Plaintiff's consumer reports was also objectively unclear and inaccurate to a reasonable consumer like Plaintiff regarding its reporting of payment history and bankruptcy notations on the disputed tradelines from Centra, TD, and Horizon, which would have caused an ordinary consumer to wonder whether the tradeline had been discharged or not, or whether Plaintiff had made any payments at all on these tradelines during his bankruptcy. Accordingly, Equifax violated 15 U.S.C. § 1681g.

89. As noted above, Equifax was a dispute regarding Plaintiff's reporting – the Equifax Dispute Letter – but it failed to adequately respond to Plaintiff. Specifically, Equifax failed to report all of Plaintiff's payment history on his TD or Horizon tradelines, and did not provide any indication at all regarding what reinvestigation it had conducted regarding the Centra tradeline.

90. Equifax failed to conduct a reasonable reinvestigation in violation of 15 U.S.C. §§ 1681i(a)(2) and 1681i(a)(6) because a reasonable reinvestigation would have resulted in correction of the errors which Plaintiff had identified.

91. On information and belief, Equifax's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports, because, *inter alia*, it failed to provide any indication of its reinvestigation of the Centra tradeline.

Such an internal failure would not have occurred but for the absence of reasonable checks and balances. This violated 15 U.S.C. § 1681e(b).

92.    Plaintiff has suffered concrete and imminent harm to creditworthiness. The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

93.    Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, and damage to Plaintiff's creditworthiness. Plaintiff's credit reporting issues with Equifax have also caused Plaintiff to suffer emotional distress in the form of fear of credit denials. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

94.    Equifax's violations of the FCRA were willful, because Equifax failed to properly respond to Plaintiff's dispute despite clearly having notice of the same; therefore, Plaintiff is entitled to statutory damages. At minimum, Equifax's violations were negligent.

95. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### TRANS UNION FCRA VIOLATIONS – 1681E(B), 1681I, 1681G

96. Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

97. Trans Union's reporting on all of Plaintiff's consumer reports was also objectively unclear and inaccurate to a reasonable consumer like Plaintiff regarding its reporting of payment history and bankruptcy notations on the disputed tradelines from Centra, TD, and Horizon, which would have caused an ordinary consumer to wonder whether the tradeline had been discharged or not, as well as whether Plaintiff had made any payments on the accounts at all during his bankruptcy. Accordingly, Trans Union violated 15 U.S.C. § 1681g.

98. As noted above, Trans Union was a dispute regarding Plaintiff's reporting – the Trans Union Dispute Letter – but it failed to adequately respond to Plaintiff. Specifically, Trans Union failed to report all of Plaintiff's payment history on his TD tradeline, and took a "one size fits all" approach regarding Horizon, deleting the account and depriving Plaintiff of the benefit of all of the payment history. And while the Centra account reported Plaintiff's payment history on reinvestigation, it continued reporting the derogatory bankruptcy notations which caused the tradeline to report negatively.

99. Trans Union failed to conduct a reasonable reinvestigation in violation of 15 U.S.C. §§ 1681i(a)(2) and 1681i(a)(6) because a reasonable reinvestigation would have resulted in correction of the errors which Plaintiff had identified.

100. On information and belief, Trans Union's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports,

because it failed to properly and consistently credit Plaintiff's payment history on the three disputed accounts.  These internal inconsistencies would not have occurred but for the absence of reasonable checks and balances to ensure consistent reporting across tradelines. This violated 15 U.S.C. § 1681e(b).

101.   Plaintiff has suffered concrete and imminent harm to creditworthiness.  The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

102.   Also as a result of Trans Union's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Trans Union's inaccurate reporting, and damage to Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with Trans Union have also caused Plaintiff to suffer emotional distress in the form of fear of credit denials.  Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

103.   Trans Union's violations of the FCRA were willful, because Trans Union failed to properly respond to Plaintiff's dispute despite clearly having notice of the same; therefore, Plaintiff is entitled to statutory damages.  At minimum, Trans Union's violations were negligent.

104. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – PLAINTIFF VS. CENTRA
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1682S-2(B)

105. Plaintiff realleges all paragraphs above as if realleged herein.

106. The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

107. Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

108. Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

109. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### SECOND CAUSE OF ACTION – PLAINTIFF VS. HORIZON
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1682S-2(B)

110. Plaintiff realleges all paragraphs above as if realleged herein.

111. The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

112. Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

113. Based on these willful violations, Plaintiff is entitled to statutory damages. 15 U.S.C. § 1681n.

114. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### THIRD CAUSE OF ACTION – PLAINTIFF VS. TD
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1682S-2(B)

115. Plaintiff realleges all paragraphs above as if realleged herein.

116. The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

117. Based on these negligent violations, Plaintiff is entitled to actual damages. 15 U.S.C. § 1681o.

118. Based on these willful violations, Plaintiff is entitled to statutory damages. 15 U.S.C. § 1681n.

119. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### FOURTH CAUSE OF ACTION – PLAINTIFF VS. EQUIFAX
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 168IE(B), 1681I, 1681G

120. Plaintiff realleges all paragraphs above as if realleged herein.

121. The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

122. Based on these negligent violations, Plaintiff is entitled to actual damages. 15 U.S.C. § 1681o.

123. Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

124. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### FIFTH CAUSE OF ACTION – PLAINTIFF VS. TRANS UNION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 168IE(B), 1681I

125. Plaintiff realleges all paragraphs above as if realleged herein.

126. The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i.

127. Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

128. Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

129. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### PRAYER FOR RELIEF

Plaintiffs respectfully request the Court grant Plaintiff the following relief against each Defendant on Counts 1 through 5:

### FIRST THROUGH FIFTH CAUSES OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

1     •     an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

2     •     award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C.

3

4     § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Huntington for each incident of

5     negligent noncompliance of the FCRA; and

6     •     any other relief the Court may deem just and proper.

7                  **TRIAL BY JURY**

8         Pursuant to the Seventh Amendment to the Constitution of the United States of America,

9 Plaintiff is entitled to, and demands, a trial by jury.

10 Dated: June 28, 2023

11                            Respectfully submitted,

12               **LAW OFFICES OF MILES N. CLARK, LLC**

13                           /s/ *Miles N. Clark, Esq.*

14                           Miles N. Clark, Esq.

15                           5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

16                           *Attorney for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28